Shirley HANKS, Plaintiff,

v.

Randy WEDDLE, Jane Doe Weddle, Orman Arnold, Jane Doe Arnold, H. Billingsley, Jane Doe Billingsley, Rex Pratt, Jane Doe Pratt, Ray Laginess, Jane Doe Laginess, Bill Odermott, Jane Doe Odermott and the City of Sunnyside, Defendants.

No. C–75–234–AAH.

United States District Court, E. D. Washington.

July 29, 1977.

nyside, Yakima County, Washington, acting under color and authority of the laws of the State of Washington.

2. On September 16, 1973, the plaintiff and her husband became engaged in a loud, boisterous confrontation and argument in front of a cocktail bar known as the Safari in the City of Sunnyside at about 4:00 in the afternoon. The parties had been drinking. The argument included accusations and denials thereof of alleged infidelity by plaintiff. The argument was loud and hysterical and was marked by abusive language and profanity.

3. As a result of the argument which occurred on a public sidewalk at the location described, including the apparent drunkenness of the parties and their lewd and profane language in public, the Sunnyside Police Department was contacted and the call was responded to by Officers Weddle and Arnold. They converged upon the scene in front of the Safari Bar where the plaintiff and her husband were involved in the described conduct. Officer Weddle got out of his car and approached the plaintiff and her husband, asking them to calm down, and stop the argument. Plaintiff's husband apparently quieted down, but plaintiff did not and indicated that she would not. Officer Arnold then advised plaintiff that she had one of three alternatives, either to quiet down, go home with her husband or journey to the police department with the officers. Plaintiff responded with profanity. She would not quiet down, she would not calm down and she would not go home with her husband.

4. The police officers exercised the highest standards of responsibility in dealing with the plaintiff. The alternatives given the plaintiff were reasonable and compassionate under the circumstances. Plaintiff insisted on going with the police. Plaintiff was under the influence of alcohol. Having decided to accompany the officers, she walked right past the police car and had to be called back to it.

5. The police officers took plaintiff to the police station and again admonished her

Shirley Hanks, pro se.

Charles Barr, Richland, Wash., for plaintiff.

Alan A. McDonald and Don W. Schussler, Yakima, Wash., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAUK, District Judge.

This matter having come on regularly for nonjury trial on the 24th day of May, 1977, before the Honorable A. Andrew Hauk, United States District Judge, and the plaintiff having appeared personally and with her attorney of record, Charles Barr, and the defendants having appeared with their attorneys of record, Alan A. McDonald and Don W. Schussler, and the court having heard the evidence presented by the parties, the arguments of counsel, and having reviewed the files and records herein and being fully advised in the premises, now makes the following

### FINDINGS OF FACT

1. Plaintiff is, and at all times pertinent hereto has been, a citizen of the United States and a citizen of the State of Washington. Defendants are police officers or appointed city officials in the City of Sun-

to quiet down so that they might contact her husband. However, plaintiff's shrill and profane behavior continued in the police car on the way to the station. Upon arriving at the station, Officer Weddle got out of the car and went into the station to check with the duty officer and to start a video tape machine. Upon returning to the car, he found the plaintiff screaming louder than ever, pounding on the window and kicking at the window. The officer believed, for good reason, that plaintiff was trying to break the windows and get out. He then opened the door to the back seat of the car and directed two slight squirts of mace in plaintiff's direction. The mace did not hurt the plaintiff in any way, but it did calm her down. After calming down, she got out of the car voluntarily and walked into the station.

6. Upon arriving in the police station, plaintiff continued to verbally abuse the officers, particularly Officer Weddle. The officers informed her of her Constitutional rights, though she said she knew her rights. When asked to put her property on a counter, she slapped down her money so hard that it bounced on the floor and down the counter. When asked to remove her wrist watch and rings, she refused. The officers tried to cajole the plaintiff and attempted to coax her into acting like a lady, advising her that she was on TV (video tape) and would at some time be seen by a judge. Plaintiff said, in effect, "I don't care". She continued to yell and scream when the officers talked. The officers advised plaintiff that if she would calm down, there was no need to jail her and she could return home with her husband. However, plaintiff's tirades became increasingly raucous. The officers then advised plaintiff that if she would not quiet down, they had no alternative but to take her to a cell. She was asked to go to a cell, but responded, "No, I won't, and don't touch me. If you touch me I'll take you to court." Plaintiff continued to threaten the officers, and refused to abide by any of their directions.

7. It then became necessary for the police officers to lift the plaintiff and bodily attempt to carry her to a cell. She was lifted off of her feet. She refused to go to the cell voluntarily. At the door of the cell, plaintiff reared back with such a force as to cause Officer Arnold, who was opening the cell door, to injure his elbow after being pushed into the door. The officers then used reasonable force in an effort to push plaintiff into the cell. She thereupon purposely fell. She was in an alcoholic stupor, she was in the act of resisting the police officers, she wanted to be uncooperative and was being obnoxious and in the process, fell on her own face. The fall was a deliberate effort to build up some sort of case against the police officers and had been preceded by her threats to sue them.

8. At no time during the course of any of these events did the police officers act unreasonably, maliciously or oppressively, nor did they at any time use force which was unreasonable under the circumstances and if plaintiff, at the time of her fall, was under arrest, she had certainly been put there on probable cause.

Upon the basis of the foregoing Findings of Fact, the court makes the following

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the cause pursuant to the provisions of 28 U.S. Code § 1343 and 42 U.S.Code §§ 1983, 1984, 1985 and 1986.

2. The conduct of the defendant police officers, which conduct is imputable to their superiors, the other named defendants in the lawsuit, was performed under color of state law. Such conduct was reasonable, based upon probable cause, and did not in any sense of the term violate any civil or constitutional right of the plaintiff. The actions of the defendants were necessary and constituted the exercise of utmost restraint under the more provocative misconduct by the plaintiff.

3. The complaint of the plaintiff should be dismissed with prejudice, and the defendants should be awarded their costs.